UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION


UNITED STATES OF AMERICA,        )
            PETITIONER,          )
                                 )
        V.                       )      5:09-HC-2083-BO
                                 )
CLYDE M. HALL,                   )
            RESPONDENT.          )
_____   )


CORRECTED TRANSCRIPT

STATUS CONFERENCE
MARCH 29, 2011
BEFORE THE HONORABLE TERRENCE W. BOYLE
U. S. DISTRICT JUDGE

APPEARANCES:

FOR THE PETITIONER:

MR. NORMAN ACKER
MR. JOSH ROYSTER
ASST. U.S. ATTORNEY
310 NEW BERN AVE.
RALEIGH, NC



FOR THE RESPONDENT:

MS. SUZANNE LITTLE
MS. JANE PEARCE
ASST. FEDERAL PUBLIC DEFENDER
P.O. BOX 25967
RALEIGH, NC

COURT REPORTER:  DONNA J. TOMAWSKI
STENOTYPE WITH COMPUTER AIDED TRANSCRIPTION

| | |
|---|---|
| 1 | TUESDAY, MARCH 29, 2011 |
| 2 | **THE COURT:** I GUESS YOU-ALL WANTED TO TALK ABOUT |
| 3 | EDWARDS FIRST AND THE THINGS THAT WERE NAMED, BUT I'D |
| 4 | PREFER TO TALK ABOUT HALL FIRST. WHO WINS THAT FIGHT? |
| 5 | **MS. PEARCE:** I THINK YOU DO, YOUR HONOR. |
| 6 | **THE COURT:** OKAY. LET'S BRING HALL OUT HERE. |
| 7 | MS. LITTLE AND MS. PEARCE, ARE YOU THE LAWYERS NOW |
| 8 | IN THIS CASE? |
| 9 | **MS. LITTLE:** YES, YOUR HONOR. |
| 10 | **THE COURT:** IS HE TRYING TO GET OUT OR ARE YOU |
| 11 | TRYING TO GET OUT? |
| 12 | **MS. LITTLE:** IT'S MUTUAL, YOUR HONOR. |
| 13 | **THE COURT:** ALL RIGHT. WE'LL SEE. |
| 14 | (RESPONDENT, CLYDE HALL, ENTERS INTO THE COURTROOM.) |
| 15 | **THE COURT:** MR. HALL HAS A 2241 THAT HE'S PRO SE |
| 16 | IN, IS THAT YOUR UNDERSTANDING? |
| 17 | **MS. LITTLE:** I BELIEVE HE'S STILL PRO SE IN |
| 18 | THAT, YOUR HONOR. |
| 19 | **THE COURT:** OKAY. AND HE WAS CERTIFIED IN JUNE |
| 20 | OF 2009? |
| 21 | **MS. LITTLE:** THAT'S CORRECT. JUNE 19, 2009. |
| 22 | HIS RELEASE DATE WAS SUPPOSED TO BE JUNE 24, 2009. |
| 23 | **THE COURT:** SO HAVE YOU BEEN HIS LAWYER SINCE |
| 24 | THEN OR WHEN DID YOU BECOME HIS LAWYER? |
| 25 | **MS. LITTLE:** OUR OFFICE HAS -- REPRESENTATION |

```
 1    WAS SWITCHED TO ME SOMETIME EARLY FEBRUARY TO ME

 2    PERSONALLY.

 3              THE COURT:  OF?

 4         MS. LITTLE:  OF THIS FEBRUARY.

 5         THE COURT:  HOW LONG HAS THE OFFICE BEEN

 6    INVOLVED?

 7              MS. LITTLE:  I THINK IT WAS 2010.

 8         THE COURT:  ALL RIGHT.  SO HE DIDN'T HAVE A

 9    LAWYER DURING 2009?

10         MR. HALL:  NO, I DIDN'T.

11         THE COURT:  OKAY.  ALL RIGHT.  WHY DON'T YOU

12    HAVE A SEAT AND LET ME GO OVER THIS.

13         MS. LITTLE:  YOUR HONOR, OUR NOTICE OF

14    APPEARANCE WAS FILED ON JUNE 2, 2010, AND WE WERE

15    APPOINTED ON JUNE 19 OF 2010.

16         THE COURT:  SO HE WENT FOR ABOUT A YEAR WITHOUT

17    REPRESENTATION AND WHEN DID COMSTOCK COME OUT, IN MAY OF

18    2010?

19              MS. PEARCE:  CAME OUT -- YES, MAY 16, 2010.

20         THE COURT:  SO RIGHT AFTER COMSTOCK YOU-ALL WERE

21    APPOINTED?

22         MS. LITTLE:  CORRECT.

23         THE COURT:  OKAY.  THANK YOU.

24       (PAUSE IN THE PROCEEDINGS.)

25              THE COURT:  HAVE YOU GONE OVER THE EVALUATION?
```

1      **MS. LITTLE:**  YES, YOUR HONOR, I HAVE.

2          **THE COURT:**  OKAY.  SO YOU ARE UP TO DATE ON ALL

3  OF THE DISCOVERY IN THE CASE?

4          **MS. LITTLE:**  AT THIS TIME WE ARE CONTINUING TO

5  RECEIVE DISCOVERY.  THE LAST DISCOVERY WE RECEIVED WAS

6  GIVEN TO US -- PROVIDED TO US ON MARCH 25 OF THIS YEAR.

7          **THE COURT:**  WE HAD, AT ONE OF THE EARLIER

8  MEETINGS, WE AGREED ON DOCUMENT DISCLOSURE BY FEBRUARY 11

9  AND SOME OTHER DISCOVERY BY MARCH 15; IS THAT RIGHT?

10         **MS. LITTLE:**  YES.  BUT WE HAVE CONTINUED TO

11  RECEIVE DISCOVERY.  AND FRANKLY, THE COURT'S EXPERT HAS

12  NOT COMPLETED THEIR REPORT YET EITHER.

13         **THE COURT:**  OKAY.  WHY DON'T YOU WANT TO STAY IN

14  THE CASE?

15         **MS. LITTLE:**  YOUR HONOR, IT MAY BE HELPFUL IF WE

16  HAVE POTENTIALLY AN EX PARTE CONVERSATION UP AT THE BENCH

17  AND ALSO YOU LISTEN TO MR. HALL, BECAUSE I THINK HE HAS

18  QUITE A BIT TO SAY ON THIS TOPIC.

19         **THE COURT:**  WELL, WHAT DO YOU WANT TO SAY,

20  MR. HALL?

21         **MR. HALL:**  ALL I CAN SAY IS THAT DURING THE

22  WHOLE THING ABOUT BEING APPOINTED THE PUBLIC DEFENDERS, I

23  HAVE BEEN BOUNCED AROUND FROM ONE PUBLIC DEFENDER TO

24  ANOTHER TO ANOTHER TO ANOTHER.  THERE'S JUST A LOT OF

25  MISCOMMUNICATION AND NO COMMUNICATION.  I FEEL IT'S NOT

1  WORKING FOR ME.

2        **THE COURT:**  YOU FEEL WHAT?

3        **MR. HALL:**  IT'S JUST NOT WORKING OUT WITH ME,

4  BEING ABLE TO TRY TO COMMUNICATE WITH SOMEBODY THAT I

5  CAN'T SEEM TO COMMUNICATE WITH.

6        **THE COURT:**  UH-HUH.  WELL, WHAT ARE YOUR

7  OPTIONS?

8        **MR. HALL:**  I DON'T HAVE ANY, TO BE HONEST WITH

9  YOU.  I DON'T HAVE ANYTHING AT ALL AT THIS TIME.

10        **THE COURT:**  THEN WHY DON'T YOU STAY WITH THE

11  PUBLIC DEFENDER IF YOU DON'T HAVE ANY OPTIONS?

12        **MR. HALL:**  IT'S JUST THAT I FEEL THAT BEING

13  BOUNCED AROUND FROM ATTORNEY TO ATTORNEY IS JUST -- I HAVE

14  TO EXPLAIN THINGS FROM ONE PERSON, THEN WHEN ANOTHER

15  PERSON COMES UP I HAVE TO EXPLAIN IT AGAIN.  IT'S LIKE

16  THEY'RE NOT COMMUNICATING WITH EACH OTHER AND I'M JUST

17  LIKE, WHAT'S GOING ON?

18      I HAVE BEEN WITH MR. ERIC, I CAN'T REMEMBER HIS LAST

19  NAME, THEN WITH MR. JOSEPH ROSS, AND THEN WITH THESE TWO.

20  IT JUST SEEMS THAT I HAVE TO KEEP TRYING TO COMMUNICATE

21  EXACTLY WHAT I'M FEELING, WHAT I'M DOING, AND WHAT I HOPE

22  TO BE DONE.  IT'S JUST NOT GETTING DONE.

23      THERE'S THINGS ABOUT MY DISCOVERY THAT ARE MISSING

24  THAT SHOULD HAVE BEEN IN THAT HASN'T BEEN BROUGHT UP.  I

25  EXPLAINED THIS TO THESE PEOPLE A COUPLE OF TIMES AND IT'S

```
1   JUST NOW THAT OUR EXAMINER HAD FINALLY COME FORWARD AND
2   SAID HE NEEDED THIS INFORMATION AND NOW THEY ARE GIVING
3   THAT INFORMATION TO HIM.  IT'S LIKE THIS IS WHAT I'M
4   TRYING TO RELATE A LONG TIME AGO, THE INFORMATION THAT
5   SHOULD BE IN THERE ALSO.
```

6       **THE COURT:**  WHAT IS YOUR GOAL?

7       **MR. HALL:**  HOPEFULLY TO GO HOME.

8       **THE COURT:**  HOW DO YOU THINK THAT'S GOING TO

9   HAPPEN IF I GIVE YOU A NEW SET OF LAWYERS OR IF I PUT A

10  NEW LAWYER ON THE CASE?

11      **MR. HALL:**  IT WOULD PROBABLY BE DELAYED PROBABLY

12  TWO OR THREE YEARS.

13      **THE COURT:**  TWO OR THREE YEARS?

14      **MR. HALL:**  SECOND GUESS.

15      **THE COURT:**  YOU THINK THAT WILL PRODUCE A

16  FAVORABLE OUTCOME?

17      **MR. HALL:**  I DON'T KNOW.  I DON'T KNOW WHAT THE

18  OUTCOME WILL BECOME.

19      **THE COURT:**  SO RIGHT NOW YOU WANT NEW LAWYERS

20  THAT WILL PRODUCE A TWO TO THREE-YEAR DELAY AND NO IDEA OF

21  WHAT THE OUTCOME WILL BE?

22      **MR. HALL:**  NO, I DON'T LIKE THAT IDEA.

23      **THE COURT:**  THAT'S WHAT YOU JUST TOLD ME.

24      **MR. HALL:**  IT'S NOT WHAT I REALLY WANT.

25      **THE COURT:**  TELL ME WHAT YOU EXPECT.

1       **MR. HALL:** I'M HOPING THAT SOMEWHERE ALONG THE

2 LINE WE CAN COME TO A COMMUNICATION THAT WOULD WORK OUT

3 FINE.

4       **THE COURT:** WHO, YOU THE YOUR LAWYERS?

5       **MR. HALL:** WHOMEVER WILL REPRESENT ME.

6       **THE COURT:** THAT'S NOT GOING TO RESOLVE THE

7 CASE. THE FACT THAT YOU HAVE A FRIENDLY TIME AND A

8 POSITIVE OUTLOOK ON YOUR LAWYERS ISN'T GOING TO BRING THE

9 CASE TO AN END. THINK ABOUT IT.

10       **MR. HALL:** I UNDERSTAND THAT.

11       **THE COURT:** WHAT'S GOING TO BRING THE CASE TO AN

12 END?

13       **MR. HALL:** HOPEFULLY ME BEING JUST THE WAY I

14 HAVE BEEN, I GUESS, BEING ABLE TO TALK ABOUT THINGS AND

15 EVERYTHING.

16       **THE COURT:** NO, HAVING A HEARING IS GOING TO

17 BRING THE CASE TO AN END. YOU WILL EITHER BE COMMITTED

18 AFTER THE HEARING OR RELEASED AFTER THE HEARING.

19 EVERYTHING YOU DO TO RETARD THE HEARING, TO HAVING A

20 HEARING, WILL JUST KEEP YOU IN THE SAME CONDITION YOU HAVE

21 BEEN IN FOR THE LAST TWO YEARS AND YOU WILL BE IN IT FOR

22 THE NEXT 20 YEARS. WHAT ARE YOU, 45?

23       **MR. HALL:** YES.

24       **THE COURT:** YEAH. SO 20 YEARS FROM NOW YOU WILL

25 BE 65, LIVING AT BUTNER.

1        **MR. HALL:** I DON'T LIKE THAT.

2        **THE COURT:** WELL, THE ONLY WAY THERE'S GOING TO

3   BE CLOSURE IS TO BRING IT TO A HEARING ON THE MERITS AND

4   HAVE A JUDGE DECIDE AND OTHER JUDGES DECIDE THAT YOU ARE

5   EITHER COMMITTED OR NOT COMMITTED.  THAT'S THE WAY THE LAW

6   WORKS.

7        **MR. HALL:** WELL, THE BEST I CAN DO IS TRY TO

8   COMMUNICATE WITH THEM BETTER, AND HOPEFULLY THEY'LL --

9        **THE COURT:** I DON'T THINK YOUR COMMUNICATION OR

10  HOW YOU FEEL ABOUT IT IS REALLY IMPORTANT.  WHAT'S

11  IMPORTANT IS HAVING THE ISSUE DECIDED AND HAVING A FINAL

12  OUTCOME AND THEN ADJUSTING OR LIVING WITH WHATEVER THAT

13  FINAL OUTCOME IS.  EITHER YOU ARE RELEASED OR YOU'RE IN

14  DETENTION.  YOU ARE NOT IN THERAPY NOW, ARE YOU?

15       **MR. HALL:** NO, SIR.

16       **THE COURT:** YOU HAVEN'T BEEN FOR THE PAST TWO

17  PLUS YEARS?

18       **MR. HALL:** NO, I HAVE NOT.

19       **THE COURT:** HAD YOU BEEN WHEN YOU WERE IN

20  GENERAL POPULATION, A CRIMINAL PRISONER?

21       **MR. HALL:** NOT THIS TIME AROUND, NO.

22       **THE COURT:** HAD YOU IN THE PAST?

23       **MR. HALL:** YES.

24       **THE COURT:** OKAY.  WELL, IF YOU ARE FOUND TO BE

25  COMMITTABLE AFTER A HEARING AND YOU DON'T ENGAGE IN ANY

1    REMEDIAL ACTION, YOU WILL NEVER GET OUT.

2          **MR. HALL:**  I UNDERSTAND THAT.

3          **THE COURT:**  ANYTHING ELSE YOU WANT TO SAY ABOUT

4    IT?

5          **MR. HALL:**  I SUPPOSE THAT I CAN TRY TO DO THE

6    BEST I CAN IN STAYING WITH THE PUBLIC DEFENDERS AND

7    HOPEFULLY WE CAN COME TO A MUTUAL AGREEMENT ON HOW TO

8    PROCEED.

9          **THE COURT:**  THEY'RE THE LAWYERS.

10         **MR. HALL:**  I UNDERSTAND THAT.

11         **THE COURT:**  YOU ARE IN A HEALTH CARE

12   SITUATION -- YOU ARE IN A LEGAL CARE SITUATION NOW, NOT

13   HEALTH CARE.  YOU DON'T GO INTO THE HOSPITAL AND SET UP A

14   REGIMEN OF TREATMENT; YOU GO IN THE HOSPITAL AND SAY, THIS

15   IS WHAT'S WRONG WITH ME, I THINK.  WHAT DO YOU THINK AND

16   HOW CAN YOU MAKE MY CONDITION BETTER?  AND THEN YOU ARE AT

17   THEIR DISCRETION.  YOU HAVE NO ABILITY TO TELL THEM WHAT

18   TO DO IN THE CASE.  YOU DON'T HAVE THE SLIGHTEST IDEA WHAT

19   TO DO IN THE CASE.

20         **MR. HALL:**  NO, I DO NOT.

21         **THE COURT:**  RIGHT.

22         **MR. HALL:**  I NEVER DENIED THAT.  I NEVER DENIED

23   WHAT I HAVE DONE, EITHER, SIR.

24         **THE COURT:**  WELL THEN, YOU KNOW, THIS THING

25   OUGHT TO COME TO A CONCLUSION PRETTY QUICKLY IF THAT'S THE

1    CASE.  ANYTHING ELSE YOU WANT TO SAY?

2         **MR. HALL:**  NO, SIR.

3         **THE COURT:**  THE LAWYERS DON'T HAVE A

4    PROFESSIONAL CONFLICT OF INTEREST THAT BARS YOU ETHICALLY

5    FROM REPRESENTING THE DEFENDANT, DO YOU?

6         **MS. LITTLE:**  NO, THERE'S NO -- NO, YOUR HONOR.

7    BUT I HAVE TO TELL YOU THERE'S A COMPLETE AND TOTAL

8    BREAKDOWN IN COMMUNICATION WITH MR. HALL.  FOR INSTANCE,

9    THIS MORNING WE ATTEMPTED TO DISCUSS SOMETHING WITH HIM

10   AGAIN AND INSTEAD -- I REALLY DON'T WANT TO TALK ABOUT

11   THIS IN OPEN COURT.  I WILL BE HAPPY TO APPROACH THE BENCH

12   AND DISCUSS IT EX PARTE.  I DON'T WANT TO HARM MR. HALL,

13   BUT IT'S PUT US IN A DIFFICULT POSITION, IF ALMOST

14   IMPOSSIBLE TO REPRESENT HIM.

15        **THE COURT:**  WELL, I'M NOT GOING TO APPOINT

16   SUCCESSIVE COUNSEL BASED ON HIS BEHAVIOR WITH COUNSEL.  I

17   CAN EITHER FORCE HIM TO BE PRO SE AND HAVE YOU BE STANDBY

18   COUNSEL OR HAVE YOU BE HIS COUNSEL.  IN THESE

19   RELATIONSHIPS, I DON'T THINK YOU HAVE TO GET ALONG WITH

20   THE CLIENT.  I THINK THAT YOU ARE THE PUBLIC DEFENDER AND

21   YOU ARE BEING APPOINTED TO REPRESENT HIM AND YOU DO THE

22   BEST YOU CAN.

23        WHAT'S YOUR POSITION ON THAT?

24        **MS. LITTLE:**  WELL, THERE ARE CERTAIN DECISIONS

25   THAT HAVE TO BE MADE BY HIM THAT WE HAVE ADVISED HIM OF

1    LEGALLY AND HE REFUSES TO MAKE A DECISION.

2         **THE COURT:**  WELL, YOU KNOW, IF A CRIMINAL

3    DEFENDANT WON'T RESPOND, THEN YOU SAY ALL RIGHT, YOUR

4    FAILURE TO RESPOND MEANS YOU PLEAD NOT GUILTY AND SO I'LL

5    TAKE IT AT THAT AND LET'S GO ON.

6         THE PARTY WHO'S THE SUBJECT OF IT DOESN'T GET TO

7    CONTROL THE PROCEEDING.  SO IF HE WON'T RESPOND, THEN THE

8    ANSWER IS HE DOESN'T AGREE.  JUST DOCUMENT THAT AND MAKE A

9    NOTE TO YOUR FILE THAT YOU PRESENTED HIM WITH ALL OF THE

10   SALIENT POINTS AND TOLD HIM WHAT THE CONSEQUENCES WERE AND

11   HE WOULDN'T RESPOND, AND SO THAT RESULTS IN SUCH AND SUCH.

12        AND THEN, I MEAN, YOU ARE NOT BARRED BY

13   ATTORNEY/CLIENT PRIVILEGE FROM TELLING ME THAT.  HE

14   DOESN'T GET TO USE THAT AS A SWORD, RIGHT?

15        **MS. LITTLE:**  NO.

16        **THE COURT:**  YOU UNDERSTAND ANYTHING I'M SAYING?

17        **MR. HALL:**  YES, SIR.

18        **THE COURT:**  WHAT'S IT MEAN TO YOU?

19        **MR. HALL:**  IT MEANS THAT I CAN'T USE MY ACTIONS

20   AND MY VERBAL CONFRONTATION TO SET THINGS THE WAY I WANT

21   THEM TO BE.

22        **THE COURT:**  YOU ARE IN AN INVOLUNTARY SETTING.

23   YOU HAVE BEEN IN AN INVOLUNTARY SETTING FOR YEARS NOW AND

24   YOU ARE GOING TO STAY IN ONE FOR YEARS IF THIS PERSISTS.

25   DOES THAT MAKE SENSE TO YOU?

1    **MR. HALL:** IT MAKES SENSE, BUT I DON'T LIKE THAT

2    IDEA.

3    **THE COURT:** WELL, OF COURSE YOU DON'T LIKE IT

4    BECAUSE YOU ARE A PRISONER NOW. YOU ARE A PRISONER

5    BECAUSE, AT LEAST CRIMINALLY, YOU HAVE BEEN ADJUDICATED IN

6    COURTS OR YOU PLED GUILTY, I'M ASSUMING. DID YOU PLEAD

7    GUILTY?

8    **MR. HALL:** I PLED GUILTY, YES.

9    **THE COURT:** WELL THEN, YOU ADMITTED IT YOURSELF,

10   RIGHT?

11   **MR. HALL:** YES.

12   **THE COURT:** AND NOW WHAT WE'RE TRYING TO DO IS

13   GET TO THE POINT WHERE WE ADJUDICATE AGAIN WHETHER YOU

14   SHOULD BE CIVILLY COMMITTED OR RELEASED. DO YOU

15   UNDERSTAND THAT?

16   **MR. HALL:** YES.

17   **THE COURT:** OKAY. WELL, I'M READY TO SET THIS

18   CASE FOR TRIAL UNLESS YOU HAVE SOME WAY OF JUSTIFYING

19   CONTINUING TO DELAY IT. HAVE YOU HAD HIM EXAMINED? NO?

20   **MS. LITTLE:** HE HAS BEEN EXAMINED BY A COURT

21   EXPERT, YOUR HONOR. THERE'S ACTUALLY A MOTION PENDING IN

22   FRONT OF YOU ABOUT PAYMENT FOR THAT COURT EXPERT'S FEES

23   AND COSTS. THAT COURT EXPERT WILL HAVE A REPORT TO US

24   SHORTLY. THERE'S SOME ADDITIONAL INFORMATION HE NEEDED

25   THAT WE'RE ATTEMPTING TO GET.

1           **THE COURT:** THIS IS A COURT EXPERT SEPARATE FROM

2 THE GOVERNMENT'S ASSESSMENT?

3           **MS. LITTLE:** THAT'S CORRECT. WE DON'T KNOW --

4           **THE COURT:** WHO IS THIS COURT EXPERT?

5           **MS. LITTLE:** DR. LEWIS RISELL.

6           **THE COURT:** IS HE A PSYCHIATRIST?

7           **MS. LITTLE:** HE'S PSYCHOLOGIST.

8           **THE COURT:** IS HE IN NORTH CAROLINA OR SOMEWHERE

9 ELSE?

10           **MS. LITTLE:** I BELIEVE HE'S IN IOWA.

11           **THE COURT:** DID HE PHYSICALLY INTERVIEW -- DID

12 HE HAVE A PERSONAL EXAMINATION OF THE DETAINEE?

13           **MS. LITTLE:** YES, HE DID.

14           **MR. HALL:** YES, SIR.

15           **MS. LITTLE:** HE SPENT ABOUT THREE TO FOUR HOURS

16 WITH HIM.

17           **THE COURT:** THAT WAS HERE IN BUTNER?

18           **MS. LITTLE:** THAT'S CORRECT.

19           **THE COURT:** YOU HAVEN'T GOTTEN THE REPORT YET?

20           **MS. LITTLE:** THAT JUST OCCURRED LAST WEEK, OR

21 WAS IT TWO WEEKS AGO?

22           **MR. HALL:** TWO WEEKS AGO.

23           **MS. LITTLE:** AND HE IS WAITING -- HE'S TRYING TO

24 WRITE HIS REPORT RIGHT NOW AND THERE'S SOME ADDITIONAL

25 INFORMATION THAT HE NEEDED THAT WE'RE GETTING RIGHT NOW

1  FOR HIM TO COMPLETE THAT REPORT.  DEPENDING ON HOW THAT

2  REPORT COMES IN, IF IT COMES IN AND IT'S CONTRARY FROM THE

3  GOVERNMENT'S EXPERT, THEN WE WOULD REQUEST THE COURT

4  APPOINT A SECOND COURT EXPERT TO RESOLVE THE DIFFERENCE IN

5  OPINION BETWEEN THE TWO EXPERTS.

6  **THE COURT:**  I'M PROBABLY NOT GOING TO DO THAT.

7  I'M PROBABLY GOING TO HAVE THE TRIAL.  IF I FEEL THERE'S

8  SOME DEFICIT AT THE TRIAL, I WOULD STOP IT AND DO THAT.

9  AGAIN, THIS IS A CIVIL MATTER AND PEOPLE NEED TO GET

10  ACCLIMATED TO THE FACT IT'S A CIVIL MATTER.  IT CAN BE

11  BROKEN UP INTO AS MANY PARTS AS YOU WANT.  THERE'S NO

12  JEOPARDY, THERE'S NO REQUIREMENT THAT YOU START IT AND GO

13  24 HOURS AROUND THE CLOCK AND FINISH IT.  IT'S JUST THE

14  WAY CIVIL COURT IS.

15  WHAT ELSE DO YOU WANT TO ADD TO IT?

16  **MS. LITTLE:**  THAT'S IT, YOUR HONOR.

17  **THE COURT:**  ALL RIGHT.  MR. RENFER OR

18  MR. ROYSTER?

19  **MR. ROYSTER:**  JUDGE, WITH RESPECT TO SETTING THE

20  TRIAL, WE JUST ASK FOR SOME SUFFICIENT TIME ONCE WE

21  RECEIVE THE REPORT THAT WE HAVE AN OPPORTUNITY TO DEPOSE

22  THE EXPERT AND ALSO TO DEPOSE MR. HALL.

23  **THE COURT:**  I'M GOING TO THINK ABOUT SETTING IT

24  FOR MAY 9.

25  **MS. LITTLE:**  YOUR HONOR, DO YOU ANTICIPATE THE

1  TRIAL GOING THAT ENTIRE WEEK?

2          **THE COURT:**  I DON'T THINK SO.

3          **MS. LITTLE:**  THE REASON IS, MY DAUGHTER IS

4  GRADUATING FROM COLLEGE THE END OF THAT WEEK.

5          **THE COURT:**  YOU CAN BE EXCUSED.  I MEAN, I

6  EXPECT -- THE LAST TIME I SET A CASE FOR TRIAL, IT

7  VAPORIZED.  SO YOU ARE ASKING ME, BASED ON EXPERIENCE, DO

8  I EXPECT IT TO GO THE WEEK.  I DON'T EXPECT IT TO EVEN

9  HAPPEN, BASED ON EXPERIENCE.  MR. ROYSTER.

10          **MR. ROYSTER:**  JUDGE, I GUESS MAY 9 IS FINE,

11  PROVIDED WE HAVE SUFFICIENT TIME TO, YOU KNOW, OBTAIN THE

12  EXPERT REPORT AND DEPOSE HIM.

13      ALSO, WE JUST ASK THE COURT FOR SOME GUIDANCE ON A

14  PRETRIAL ORDER, IF THAT'S SOMETHING FOR A DEADLINE.

15          **THE COURT:**  I WOULD FOREGO A PRETRIAL ORDER.

16          **MR. ROYSTER:**  OKAY.

17          **THE COURT:**  THAT WOULD BE MY PREFERENCE.  I

18  DON'T LIKE TO READ THEM AND THEY'RE USUALLY

19  COUNTER-PRODUCTIVE, BECAUSE YOU TRY TO ANTICIPATE THINGS

20  THAT, I MEAN, YOU DON'T REALLY KNOW, LIKE FIND OUT WHO

21  YOUR WITNESSES WILL BE.  WHAT GOOD WOULD A PRETRIAL ORDER

22  BE?

23          **MR. ROYSTER:**  PARTICULARLY WITH RESPECT TO THE

24  PARTIES SO WE KNOW WHERE WE'RE HEADED WITH THIS THING.  IF

25  THE COURT DOESN'T WANT TO ENTER AN ORDER, PERHAPS THERE

1  COULD BE AN ARRANGEMENT BETWEEN THE PARTIES TO EXCHANGE

2  WITNESS LISTS AND EXHIBITS.

3          **THE COURT:** THAT WOULD BE FINE. I WOULD BE

4  PLEASED IF YOU COOPERATED.

5          **MS. LITTLE:** WE HAVE NO OBJECTION TO THAT, YOUR

6  HONOR.

7          **THE COURT:** I DON'T THINK YOU NEED A PRETRIAL

8  ORDER. WE'LL SET MR. HALL FOR TRIAL THE WEEK OF MAY 9 AND

9  SEE IF IT MATERIALIZES OR IF YOU HAVE PROBLEMS LEADING UP

10 TO THAT.

11     WHAT ARE YOUR OTHER CONCERNS ABOUT HIM, ABOUT THE

12 MONEY?

13         **MS. LITTLE:** YES, YOUR HONOR. THE OTHER ISSUE

14 THAT'S PENDING BEFORE YOU IS THE APPOINTMENT -- ACTUALLY,

15 THERE WAS AN EXPERT APPOINTED BY THE COURT FOR THE PAYMENT

16 OF THE FEES.

17         **THE COURT:** DID THE EXPERT SUBMIT A BILL?

18         **MS. LITTLE:** NOT AT THIS POINT.

19         **THE COURT:** DO YOU KNOW WHAT THE BILL IS GOING

20 TO BE?

21         **MS. LITTLE:** NO, I DO NOT.

22         **THE COURT:** CAN YOU ASK HIM?

23         **MS. LITTLE:** WE COULD.

24         **THE COURT:** I MEAN, IS IT GOING TO BE $1,000 OR

25 $10,000 OR $100,000?

1          **MS. LITTLE:**  I DON'T KNOW.

2          **THE COURT:**  WE COULD RAISE A COLLECTION IF IT'S

3     $1,000.  IF IT'S $100,000, MIGHT HAVE TO PUT IT IN THE

4     BUDGET.

5          **MS. LITTLE:**  HE HAD TO FLY OUT HERE AND REVIEW

6     VOLUMINOUS RECORDS.  HE PROBABLY WILL BE DEPOSED PLUS

7     APPEAR FOR THE TRIAL.  SO IT'S GOING TO BE A FAIRLY

8     SIGNIFICANT FEE.

9          **THE COURT:**  OKAY.  DO WE KNOW WHAT THE

10    GOVERNMENT PAID THEIR EXPERT?

11         **MS. LITTLE:**  NO.

12         **THE COURT:**  OKAY.  DOES THAT MATTER?

13         **MS. LITTLE:**  NO.

14         **THE COURT:**  OUT OF FAIRNESS?

15         **MS. LITTLE:**  NO.

16         **THE COURT:**  WHAT'S GOOD FOR THE GOOSE IS GOOD

17    FOR THE GANDER?

18         **MS. LITTLE:**  NO.  THIS EXPERT, IT'S A COURT

19    EXPERT.

20         **THE COURT:**  BUT THERE HAS TO BE SOME GOVERNANCE

21    OVER IT.  YOU WANT TO GET YOUR MONEY'S WORTH OUT OF IT.

22         **MS. LITTLE:**  WE WERE ASKED TO SELECT AN EXPERT

23    FOR THE COURT.  WE SELECTED WHAT WE THOUGHT WAS GOING TO

24    BE THE BEST EXPERT.

25         **THE COURT:**  DO I HAVE UNLIMITED AUTHORITY UNDER

```
1    THE CJA ACT TO APPROVE FEES?

2              MS. PEARCE:  THIS IS NOT UNDER CJA, IT'S BY

3    STATUTE UNDER 18 USC 4247.

4              MR. ACKER:  YOUR HONOR, THEY FILED A MOTION AND

5    OUR RESPONSE IS DUE APRIL 5.  WE HAD FILED IN SOME OF THE

6    OTHER CASES A FAIRLY VOLUMINOUS RESPONSE ON WHO PAYS.  THE

7    QUESTION IS WHETHER IT'S SOMETHING THAT COMES OUT OF CJA

8    FUNDS OR SOMETHING THE DOJ HAS TO PAY.  WE'RE PREPARED BY

9    APRIL 5, WHEN OUR NORMAL DEADLINE WOULD BE, TO FILE A

10   RESPONSE BRIEF AND HAVE THE COURT RULE ON IT AFTER THAT.

11   IF YOUR HONOR WANTS ORAL ARGUMENT, WE WOULD BE PREPARED TO

12   COME AND DO THAT.

13             THE COURT:  THAT'S NEXT MONDAY, RIGHT?

14             MR. ACKER:  TUESDAY.

15             THE COURT:  OKAY.  I'LL GIVE YOU YOUR NORMAL

16   TIME TO RESPOND AND I'LL MAKE A RULING ON THAT AFTER

17   HEARING OR WITHOUT A HEARING ON THE FEE PAYMENT.

18             MS. LITTLE:  THANK YOU, YOUR HONOR.

19             THE COURT:  THAT'S THE ONLY REAL PENDING MATTER,

20   ISN'T IT?

21             MS. LITTLE:  THAT'S CORRECT, YOUR HONOR.

22             THE COURT:  I'M NOT GOING TO ALLOW YOU TO

23   WITHDRAW AND WE'LL SET IT FOR TRIAL.

24             MR. ROYSTER:  JUDGE, CAN WE REQUEST A DEADLINE

25   FOR RECEIVING THE EXPERT'S REPORT?
```

1          **THE COURT:**  YEAH.  LET'S MAKE IT THE 8TH OF

2    APRIL.

3          **MR. ROYSTER:**  THANK YOU, JUDGE.

4          **MS. LITTLE:**  YOUR HONOR, I'M NOT SURE THAT WE'RE

5    GOING TO BE ABLE TO MEET THAT DEADLINE.

6          **THE COURT:**  ASK HIM TO TRY.

7          **MS. LITTLE:**  I'M SORRY?

8          **THE COURT:**  ASK HIM TO TRY.

9          **MS. LITTLE:**  I AM DEFINITELY GOING TO ASK HIM TO

10   TRY.  WE MAY HAVE TO SUPPLEMENT IT, LIKE THE GOVERNMENT

11   SUPPLEMENTED THEIR REPORT.

12         **THE COURT:**  THAT'S NOT A PROBLEM.  NOBODY CAN

13   READ ALL THE STUFF ANYWAY, BUT THEY CAN GET A RUNNING

14   START ON IT.

15       THAT WILL TAKE CARE OF IT.  MR. HALL, YOU UNDERSTAND

16   WHAT'S GONE ON HERE?

17         **MR. HALL:**  YES.

18         **THE COURT:**  WE'RE GOING TO TRY TO GET YOU A

19   TRIAL IN MAY, WHICH IS BASICALLY FIVE OR SIX WEEKS FROM

20   NOW.  IF YOU DON'T DO ANYTHING TO RETARD THAT OR INTERFERE

21   WITH IT, MAYBE YOU'LL HAVE A BETTER IDEA WHERE YOU STAND

22   THEN.  IS THAT NOT BETTER THAN WHAT'S GOING ON NOW?

23         **MR. HALL:**  YEAH, IT IS.  YES.

24         **THE COURT:**  RIGHT.  OKAY.

25                    END OF TRANSCRIPT

1                          CERTIFICATE

2        THIS IS TO CERTIFY THAT THE FOREGOING TRANSCRIPT OF

3   PROCEEDINGS TAKEN AT THE CIVIL SESSION OF UNITED STATES

4   DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF THE

5   PROCEEDINGS TAKEN BY ME IN MACHINE SHORTHAND AND

6   TRANSCRIBED BY COMPUTER UNDER MY SUPERVISION.

7        THIS THE 25TH DAY OF AUGUST, 2011.

8

9                          /S/ DONNA J. TOMAWSKI

10                         DONNA J. TOMAWSKI
                           OFFICIAL COURT REPORTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25